Good morning, Your Honors. Raul Montes, appearing on behalf of the petitioner, Mr. Jaimes. In this case, Your Honors, the first issue I'd like to discuss is the question of mootness, and following up on the prior case, the issue is Ms. Sylvia Gonzalez-Jaimes, in 2001, filed an affidavit of support. She has never disavowed that affidavit. But a lot of time had passed, and there was some reason to suspect that maybe the relationship wasn't the same that it was when she filed the affidavit. Well, the relationship is not a question, Your Honor, that there was an issue before the court. So long as they had not filed a divorce proceedings, the marriage, as I understand it, the Immigration Service has not got to get into the situation where they're not there to continue to marry. Well, I mean, just say you were an ordinary creditor, and you've gotten someone to co-sign some years before on an obligation, and you come to know that the relationship between those two people has changed. In this case, that the husband and wife, though no legal papers were filed, had split up. And that might give you some concern that, you know, the wife might not be all that forthcoming on paying the husband's debts in the future, and I might actually have to go into legal process and do it the hard way, and I don't really want to do that. So let's make sure the wife's going to reavow that, yeah, she'll stand behind him. I mean, that doesn't strike me as illogical or unreasonable. And with the passage of time, isn't it something the agency was entitled to request? Well, Your Honor, I think there's two questions. One is, she reavowed the affidavit that she submitted back in 2001 by being present in court and not disavowing it or denying that she was- Well, Your Honor, she would have been simple for her to sign something. She declined to do so, and she wanted to have a discussion with the I.J. about it. Well, yeah, at that point, they were separated, and they continue to be separated. And what happened is, you know, she was just insured, and one of the positions- although it's not on the record, but obviously my first obligation is to the petitioner, and I could not really advise her- Is the I.J. really in a good position to be her lawyer? No, no, no, Your Honor. I don't think that's the case. I think had the court said, well, what additional- what is your present economic status? I think that that's a valid inquiry. You know, he was making, what, approximately 33- Well, I mean, the I.J. wasn't seeking questions from her. The I.J. was seeking reaffirmance by her, a current signature. And she was declining to give that, as I understood it. I mean, if her signature had been there, we wouldn't be in this position. But as I understood it, she was declining to give that because she wanted to confer with the I.J. somehow. Well, now, the I.J., I can understand his position. Sometimes you freely dispense advice, and sometimes you don't, and discretion is the better part of valor. He declines to dispense advice or talk to her separately. Whose problem does that become? Is it the I.J.'s problem? But it's not a problem, Your Honor, because we have the document that's signed by her. It's an original document. And he asked for a current one, and she won't give it until he can talk to the I.J., and the I.J. doesn't want to talk to her. Whose problem is that? My concern is that it sounds like your client's problem at that point. Now, what's the solution? No, I don't believe, really, Your Honor, that at any point that she said she would not sign a new document. But she hadn't signed it. Yeah, and she still hasn't signed it. But the I.J. is supposed to sit there and say, well, let's see, we've got a couple hours this afternoon. Maybe she'll change her mind and actually put her signature on the piece of paper. But she already signed a piece of paper. Years ago. Yes, in 2001. Nothing currently. And she's specifically declining to sign something currently, at least until she can talk to the I.J. But if we go back to 2001, what happened? The only reason that he was denied the justice status was because he had the pending conviction for misdemeanor drug possession, whereby he was serving a sentence under the Penal Code 1000 program. And when we went there, as I indicated in the brief, I believe, and the officer led us to believe that, well, she was going to wait until the 18 months had passed by in order to determine whether he would be able to do away with his criminal conviction, which he did eventually. But they didn't wait a few, several months before the 18 months had transpired, the issue they noticed to appear. So all the issues were taken care of. They approved the I-130 at that hearing. All the other documents were found. There was no reason to say other than to update the documents, you know, show new tax returns, show other proof of income. I mean, this comes all the way back to the problem I posed at the beginning. The prospective creditor has reasons to be concerned that maybe the wife isn't going to stand up because, in fact, their relationship has changed. All the IJ appears to be seeking is a reaffirmation by her, and at least as related in the IJ's decision, there were three extensions of the filing deadline to try to accomplish that. It wasn't accomplished. The wife is in the courtroom on that day. The IJ doesn't rule out the possibility, although it doesn't come up, of her actually signing the paper and turning it in then. But he notes that he understands the sponsor won't file it unless she can talk to the court about that. The court doesn't think he's in a position to do that. Whose problem does that become? I mean, it seems to me it's not an unreasonable request to have some recurrent affirmation, and it has never been forthcoming. So why is it the IJ at that point, or we should say the government is required at that point to go back and accept what was filed years before when the request for something current seems so eminently reasonable and supported by the regulation? Because it had already been accepted, Your Honor, and it hadn't been disavowed. What do you mean when you say it hasn't been disavowed? When she's saying, oh, I'm not sure I'm ready to do this, that kind of sounds like a disavowing to me. As to the new affidavit of support, Your Honor. Well, all that does is reaffirm what she said before. So why should we believe the old one's still in effect if she won't sign it and say, yeah, it's still there, I'm still behind him? Because she signed it. And she signed it before an immigration officer. What's she supposed to do to disavow it? She's supposed to sign a new piece of paper that says I disavowed, or is it just enough that she goes in front of the IJ and she says, you know, I'm not so sure given the relationship I've got with this guy now. I'm not, you know, I don't know if I want to pay for this guy. What's necessary in your view to get out from under the piece of paper that she signed some time ago? Well, she would have to formally say, well, I'd like to withdraw the affidavit of support that I submitted back in 2001. Is there a magic word, I withdraw? Well, something's shown an intent that she didn't intend to comply with the terms of the 2001 packet. Is the IJ somehow abusing his discretion to insist upon, you know, a lot of time has gone past, I hear your hesitation, I want a new one of those. But what would a new one do, Your Honor? A new one would say, I mean it now. No, Your Honor, it says exactly the same thing that she did. But counsel, doesn't the regulation, specifically 8 CFR 213A21VB, give the immigration judge discretion to request that if more than one year has passed since the filing of the original form? Isn't that what the regulation provides? Well, even, that's a discretion, Your Honor. But what I'm saying is there is a basis in law for the IJ to ask that. And if new evidence is not submitted, given the circumstances of the separation of the parties, the refusal of the spouse or former spouse or whatever you want to say to sign the new one, he is within his discretion, is he not, to say, I'm going to treat this as if it's not good anymore. Well, I think that's just one factor in the entire. It is just one, but it is a factor. And he's entitled to reach that conclusion, right? Excuse me. I don't concede that. But I think in the overall picture of the thing that occurred, that factor does not outweigh all the other factors to show that, you know, in this case, she is still abiding by the original affidavits. I think we've got your position well in hand. Let's hear from the government, and then we'll give you time to respond. I had a few more points, if I could, regarding the matter of, we were talking about the 40 quarters. In this case, I believe the record clearly shows in pages 289 to 347. Did you raise that in your brief? No, no, I didn't, Your Honor. I just submitted some. Now, what happened here, I'd like to point out. If you didn't raise it in your brief and all I get is this very late submission, that seems to me as though it's waived. Okay, but I'd like to point out that this was in 2001 a policy, a policy memorandum from the Immigration Service, and the memorandum was submitted to the attorneys for the immigration. I don't see that as a question raised in the brief you presented to us on appeal. Yes. Am I wrong? No, no, you're not wrong, Your Honor. Now, the other thing I'd like to discuss, Your Honor, is the question of jurisdiction as to the cancellation of removal. Why don't we let's see if the government raises that, and if it does, we'll give you a chance to respond. Thank you, Your Honor. Let's hear from you. Appreciate it. May it please the Court, Sharon Clay, counsel for the Attorney General. I apologize. That's okay. As a preliminary matter, we would like to state that we believe that the discretionary denial of petitioner's application for cancellation of removal is not appropriate for this hearing. There is no jurisdiction by this Court to entertain it. Petitioner has not raised a constitutional question of law. Does it have to be a constitutional question or can it be a legal question under Ramadan if the facts are undisputed? No, not under Ramadan. This Court has actually held that purely discretionary determinations are without review unless there is a constitutional question. I understand the discretionary determination is so. But if we've got underlying legal questions, that seems to me we do have jurisdiction. The discretionary determination is clearly outside of our jurisdiction. I understand that. That's correct. But the only issues raised by a petitioner are clearly abusive discretion issues. Okay. And, therefore, not culpable constitutional claims, right? Correct, to be raised in this Court. With regard to their request for an extension of voluntary departure, we feel the same. There is no jurisdiction for this Court to entertain a voluntary departure question. Government also objects to the submission of documents with regard to the memorandum on the 40 qualifying hours. There's no jurisdiction to entertain. It was not raised before. It cannot be raised now. Even assuming jurisdiction, there's a question of whether or not he's established the 40 qualifying hours. The record reveals that petitioner has used or purchased someone else's Social Security number that was used for his employment over the course of the last 10 years. So there's a question about whether or not he would even have the 40 qualifying hours based on Title II Social Security Act. Yes, not about the qualifying hours, quarters. But assume, and I'm not asking you to concede. I'm inclined, actually, to go the other way, speaking only for myself. But assume that the I.J. erred in requiring a new affidavit of support from the estranged spouse. Assume that the I.J. was required to look at the previous affidavit that had been signed and say, until she signs a formal piece of paper withdrawing that, that is still valid. Assume that the I.J. made a mistake on that point. And assume, then, that we would hold that that's a mistake and that the I.J. then erred in saying that he hadn't presented sufficient evidence of support. Is that a revealable question, if we would hold that he made an error of law in so determining? I'm not asking you to concede that he made an error of law. For my own self, I'm inclined to think that he did not. But I'm asking you whether it would be within our jurisdiction to decide that question. Within your jurisdiction, I do not believe so. The immigration judge could entertain the question had it been raised before the immigration judge at that time. But according to the regulations, he would still have had to file the I-864-W form to express an exemption to the requirement to file the affidavit of support, which he has not done. No, no, that's on the merits. I'm just asking whether we have jurisdiction to decide the question on the merits, not what the merits are. Oh, yes. Yes, you heard the question. Yes, we have jurisdiction. Yes, we have jurisdiction to decide the adjustment of status. I have a question on the bases for the BIA's denial of the adjustment of status. 8 U.S.C. 1182-AB-4BI indicates that the attorney general has to consider at a minimum five different things before there's a determination that the alien is going to become a public charge. My review of the record suggests that the IJ did not consider all these five factors. Do you agree with that? No, I don't. Under the 212-A4C, actually a family-sponsored immigrant is required to submit the affidavit of support unless he presents a reason for its exemption or any alternative which was not raised before. It would include the 40 qualifying hours and the Title II. So you're saying that there's no requirement, despite the statute, that they determine the public charge issue because if no affidavit is appropriately presented, you never get to that. Well, actually, the immigration judge addressed both. I mean, it was sort of conclusory, but he said that he believed him to be likely a public charge based on the fact that he owed back taxes to the state of California and to the federal government. Okay, well, as I understand it, while he did owe back taxes, he was on a payment program. He was solvent at the time. He was making the payments. Does that make him likely to become a public charge? Well, not entirely. However, the judge is entitled to consider the fact that he has his child support obligations. He currently has three children that he's not custodial parent of, and he had just recently been court ordered to pay $254 per month in child support. In all events, if the I.J. considered these five factors, what the I.J. decided with respect to that, is that beyond our review because it's basically a discretionary determination on the part of the I.J.? Or are these substantial evidence kinds of issues? The government would submit that it's beyond your discretion. I mean, beyond the court's discretionary review. Because it's discretionary on the part of the I.J.? Yes, adjustment of status is extremely discretionary. So the I.J. has the right, has to consider these things, but as long as he or she did that and weighed them, that's beyond our jurisdiction? Yes. However, these regulations do require that he submit an affidavit of support. The government wants to address the issue of the disavowing of the affidavit. We do recognize that there is an affidavit in the record. However, the regulations do not necessarily contemplate the use of an affidavit of support after an application for adjustment of status has been denied. Let me ask you this. This is the one part of the case that troubles me in terms of your side of it, and that is it seemed to me that the I.J. decided that he was likely to become a public charge based on the fact that he had back taxes owing. I mean, that seemed to be the beginning and the end of it as far as the I.J. was concerned. Was the I.J. right on that point? Did owing back taxes automatically mean you were going to be a public charge? No, no, no. Well, that was his finding of being a public charge under prong A of section 212A4C. However, there is no discretion on the part of the I.J. to make the determination that he doesn't require to submit the affidavit under 212A4C. Under 212A4C, because he's a family-sponsored immigrant, he's required, regardless of determination of public charge, to submit an affidavit of support. And this affidavit that he has submitted, as you have pointed out, is old, and the immigration judge properly requested that they renew the application. But the other thing I wanted to raise about that issue is, though, again, like I said, the use of the affidavit of support has to be disavowed, according to 8 CFR 213A.2F2, prior to the determination or decision on an adjustment of status application. When that application was filed in 2001, there was a decision made in 2002 about that particular application, which would lead one to believe that her opportunity to disavow the affidavit had come and gone, and that this is sort of a new application for adjustment of status, requiring a fresh affidavit of support to defend it. Because otherwise you would have a petitioner who could go to another state and submit the same affidavit of support without her knowledge and still qualify minimally for adjustment of status without her knowledge. Because she, based on the actions of both the counsel and the immigration judge, she had no reason to believe that she was obligated to disavow the document. Because from 2004, the counsel was in discussions with the wife about the validity of the affidavit of support, which would lend her to believe that there is no valid affidavit of support on the record. Open the door on that question. Any more questions? Thank you. Thank you. Would you like one minute? Yes, Your Honor. On the question of jurisdiction, I just want to point out that it's my position that, based on Article III, plain reading of that, taken as a whole, that the Court has jurisdiction. Article III? Beg your pardon, Your Honor. Article III of what? Of the United States Constitution, Your Honor. Apology. Yes. We do have authority from our Court that speaks directly to some of these questions. I'm aware, Your Honor. You can make your constitutional argument, but this panel really isn't going to be in a position to do much about it. But for the record, I would just like to point out that that is our position, that we have a constitutional right to jurisdiction pursuant to Article III, and that's, as I stated, a plain reading of that and taken as a whole. The only question here, and I don't want to get into it based on the Court's comments, is that with the Exceptions Clause, and that would take a little more time to develop, but I believe that there is no problem with jurisdiction, both in this case and in the prior case. Thank you, Your Honor. Thank you. The case of Hymus-Fuentes v. Holder now submitted for decision. And we'll take a five-minute break between now and the next case. The next case is United States v. David and Stefani. We'll take five minutes. Thank you.
judges: Fletcher W. , Clifton, Smith M.